CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

JAN 1 2 2015

JULIA C. DUDLEY, CLERK
BY: /s/
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
CHARLOTTESVILLE DIVISION

JONATHAN AND KARA REDMAN, )
)
    Plaintiffs, )   Civil Action No. 3:14CV00006
)
v. )   **MEMORANDUM OPINION**
)
FEDERAL NATIONAL MORTGAGE )   By: Hon. Glen E. Conrad
ASSOCIATION, et al., )   Chief United States District Judge
)
    Defendants. )

This case is presently before the court on motions to dismiss filed by Federal National Mortgage Association ("Fannie Mae"), Ocwen Loan Servicing, LLC ("Ocwen"), and Atlantic Trustee Services, LLC ("Atlantic"). For the reasons set forth below, Fannie Mae and Ocwen's motion will be granted in part and denied in part, and Atlantic's motion will be granted.

## Background

The following facts, taken from the plaintiffs' amended complaint, are accepted as true for purposes of the defendants' motions to dismiss. See Erickson v. Pardus, 551 U.S. 89, 94 (2007).

On April 12, 2007, Jonathan and Kara Redman ("the Redmans") obtained a home mortgage loan from American Brokers' Conduit for property located at 5834 Jefferson Mill Road, Scottsville, Virginia. The loan was evidenced by a promissory note and secured by a deed of trust on the property. The note was later assigned to Fannie Mae.

In 2012, the Redmans' mortgage loan was serviced by American Home Mortgage, Inc., which later changed its name to Homeward Residential. The Redmans made their mortgage payments electronically by remitting payments directly from their bank account to the servicer's bank account.

In December of 2012, Ocwen purchased Homeward Residential and took over responsibility for servicing the Redmans' loan. Ocwen changed the loan account number, the name of the payee, and the address at which to send loan payments. However, Ocwen did not notify the Redmans of these changes. Consequently, from January of 2013 through April of 2013, the Redmans continued to make electronic payments to the bank account that had been used by American Home Mortgage, Inc. None of these payments were credited to the Redmans' loan account, and two of the payments were returned to the Redmans' bank account without their knowledge.

In May of 2013, the Redmans learned that Ocwen had taken over responsibility for servicing their loan. The Redmans spoke to an Ocwen representative by telephone, and discovered that their two most recent loan payments had been returned to their bank account. The Ocwen representative provided a new bank account number for electronic loan payments. The Redmans then forwarded two payments to Ocwen to cover the amount that had been returned to their bank account.

On May 7, 2013, Ocwen issued a statement indicating that $5,179.98 was due as of March 1, 2013, which included overdue payments and outstanding late charges. The Redmans claim that the $5,179.98 figure was incorrect and that it did not reflect payments that were previously made in 2013.

In July of 2013, Mr. Redman contacted Ocwen to attempt to make another loan payment. An Ocwen representative told Mr. Redman that the loan payment was past due and, thus, that Ocwen "could not accept any normal payments on the account unless he paid several thousand dollars in addition to this normal payment to bring the account current." Am. Compl. ¶ 41, Docket No. 14. Based on this representation, which the Redmans claim was inaccurate, the

2

Redmans made no payment in July of 2013, because they did not have the amount demanded by Ocwen. The Redmans allege that they could have made their loan payment if they had been told the correct amount due.

On August 5, 2013, the law firm of Glasser & Glasser, PLC ("Glasser & Glasser") mailed the Redmans a notice advising them that their loan was in default. Mr. Redman subsequently spoke to one of the law firm's employees, Elizabeth Rankin, who "insisted[ed] that a very large sum of money was necessary to resinstate the loan, and that the only way for the Redmans to avoid foreclosure was to pay this very large amount." Id. ¶ 54. Mr. Redman indicated that he had funds available in his retirement account to reinstate the loan, and that he would withdraw those funds and pay the amount that was demanded. In response, Ms. Rankin provided Mr. Redman with a reinstatement figure of $7,603.46. With this figure in mind, Mr. Redman subsequently made preparations to withdraw funds from his retirement account.

On September 27, 2013, Glasser & Glasser issued a notice advising the Redmans that Atlantic had been appointed as substitute trustee, and that the Redmans' property would be sold at a foreclosure sale on October 16, 2013. Although the Redmans acknowledge that this notice was sent, the Redmans maintain that they did not receive a copy of the notice until after the foreclosure sale had already occurred, and that they had no knowledge of the foreclosure sale until October 18, 2013, when Mr. Redman called Ms. Rankin and learned that the property had been sold two days earlier.

Fannie Mae purchased the Redmans' property at the foreclosure sale. After the foreclosure deed was recorded, Fannie Mae initiated an unlawful detainer action against the Redmans in the General District Court of Albemarle County. The General District Court awarded possession of the property to Fannie Mae.

3

Case 3:14-cv-00006-GEC   Document 37   Filed 01/12/15   Page 3 of 12   Pageid#: 444

On January 21, 2014, the Redmans filed the instant action against Fannie Mae, Ocwen, Glasser & Glasser, and Atlantic in the Circuit Court of Albemarle County. Fannie Mae and Ocwen removed the case to this court. Upon removal, the Redmans filed an amended complaint in which they asserted the following claims: breach of contract by Fannie Mae (Count One); conversion by Fannie Mae and Ocwen (Count Two); violations of the Federal Debt Collection Practices Act by Glasser & Glasser (Count Three); breach of fiduciary duties by Atlantic (Count Four); violations of the Federal Real Estate Settlement Procedures Act by Ocwen (Count Five); quiet title against Fannie Mae (Count Six); slander of title against all defendants (Count Seven); conspiracy against all defendants (Count Eight); and equitable rescission of foreclosure against Fannie Mae (Count Nine).

The defendants subsequently moved to dismiss portions of the amended complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. The court held a hearing on the motion on September 12, 2014. Following the hearing, the court received supplemental briefs on certain issues, and the plaintiffs voluntarily dismissed their claims against Glasser & Glasser.

## **Standard of Review**

When deciding a motion to dismiss for failure to state a claim, the court must accept as true all well-pleaded allegations and draw all reasonable factual inferences in the plaintiffs' favor. Vitol, S.A. v. Primerose Shipping Co., 708 F.3d 527, 539 (4th Cir. 2013). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (internal citation and quotation marks omitted). To survive dismissal for failure to state a claim, "a complaint must contain sufficient factual

4

matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 570). In reviewing a Rule 12(b)(6) motion, the court may consider the complaint, its attachments, and documents "attached to the motion to dismiss, so long as they are integral to the complaint and authentic." Sec'y of State for Defence v. Trimble Navigation Ltd., 484 F.3d 700, 705 (4th Cir. 2007).

## Discussion

### I.  Count Two: Conversion

In Count Two of the amended complaint, the Redmans assert a claim for conversion against Fannie Mae and Ocwen. To support this claim, the Redmans allege that Fannie Mae and Ocwen took possession of the Redmans' loan payments in 2013, and failed to apply the payments to the Redmans' loan account or return the payments.

The parties agree that the Redmans' state law claims are governed by the substantive law of Virginia. In moving to dismiss the claim for conversion, Fannie Mae and Ocwen first argue that the claim is precluded under Virginia law, because the Redmans "have not asserted a violation of a duty that exists outside of the contracts between [the parties]." Br. in Supp. of Mot. to Dismiss 5, Docket No. 16-1. Fannie Mae and Ocwen are correct that the Supreme Court of Virginia has expressed an unwillingess to permit parties to turn every breach of contract into a tort claim. See Richmond Metro. Auth. v. McDevitt Street Bovis, Inc., 507 S.E.2d 344, 348 (Va. 1988). Nonetheless, the Supreme Court has recognized that "a party can, in certain circumstances, show both a breach of contract and a tortious breach of duty." Id. The resolution of whether a claim sounds in contract or tort depends upon the source of the duty violated. Id. To avoid turning every breach of contract claim into a tort claim, "the duty tortiously or negligently breached must be a common law duty, not one existing between the parties solely by virtue of the contract."

5

Foreign Mission Bd. v. Wade, 409 S.E.2d 144, 148 (Va. 1991); see also Station #2, LLC v. Lynch, 695 S.E.2d 537, 540 (Va. 2010) ("[A]n omission or non-performance of a duty may sound both in contract and in tort, but only where the omission or non-performance of the contractual duty also violates a common law duty.").

Applying these principles, the court is constrained to conclude that the Redmans' claim for conversion against Fannie Mae and Ocwen may be pled in conjunction with their breach of contract claim against Fannie Mae. As an initial matter, the court notes that the record is devoid of any indication that the Redmans had a contract with Ocwen. Consequently, it cannot be said that the Redmans' claim for conversion against Ocwen sounds only in contract. Moreover, this court and others have previously recognized that the "'the duty not to convert the property of another for one's own purposes' exists in the absence of any contract, and thus provides the basis for an 'independent tort [claim].'" Combined Ins. Co. of Am. v. Wiest, 578 F. Supp. 2d 822, 833 (W.D. Va. 2008) (quoting Hewlette v. Hovis, 318 F. Supp. 2d 332, 337 (E.D. Va. 2004)); see also Jones v. Bank of Am. Corp., No. 4:09CV162, 2010 U.S. Dist. LEXIS 142918, at *15-16 (E.D. Va. Aug. 24, 2010) ("A plaintiff's claim for conversion may stand regardless of whether a contract exists because the common law duty not to convert the property of another for one's own purposes provides the basis for an independent tort action.") (internal citation and quotation marks omitted); Pre-Fab Steel Erectors, Inc. v. Stephens, No. 6:08-cv-00039, 2009 U.S. Dist. LEXIS 26548, at *33-34 (W.D. Va. Apr. 1, 2009) (holding that a conversion claim could be asserted "regardless of whether a contract exists," since the plaintiff was "not merely asserting another breach of contract [claim] masked as a conversion claim, but [was] alleging that the defendants wrongfully converted Plaintiffs' money"); PGI, Inc. v. Rathe Productions, Inc., 576 S.E.2d 438, 443 (Va. 2003) ("A cause of action for conversion lies independent of an action in contract and may provide a separate

6

basis, distinct from the contract, upon which one [party] may sue another."). Consistent with these decisions, the court concludes that the Redmans are not limited to pursuing contractual theories of relief for the alleged conversion of their money.

The court further concludes that the Redmans have adequately stated a claim for conversion. As set forth above, the Redmans allege that Fannie Mae and Ocwen took possession of their mortgage payments, and failed to either credit the payments to the Redmans' outstanding loan balance or return the payments. Instead, according to the Redmans, these defendants "simply pocketed" the payments. Pl.'s Br. in Opp'n 5, Docket No. 24. Under Virginia law, "[a]ny distinct act of dominion wrongfully exerted over the property of another, and in denial of his rights, or inconsistent therewith, may be treated as a conversion." Condo. Servs., Inc. v. First Owners' Ass'n of Forty Six Hundred Condo., Inc., 709 S.E. 2d 163, 171 (Va. 2011). At this stage of the proceedings, the court is of the opinion that the allegations in the amended complaint, which must be accepted as true, are sufficient to withstand review under Rule 12(b)(6). See, e.g., Stroman v. Bank of America, Corp., 852 F. Supp. 2d 1366 (N.D. Ga. 2012) (holding that the plaintiff adequately stated a claim for conversion where the plaintiff "allege[d] that she made her monthly mortgage payments to the [Bank of America] Defendants and that the [Bank of America] Defendants then failed to appropriately apply her mortgage payments to the outstanding debt"); Woods v. Greenpoint Mortg. Funding, Inc., No. 2:09-1810, 2010 U.S. Dist. LEXIS 41492, at *27 (E.D. Cal. Apr. 28, 2010) (denying defendants' motion to dismiss a conversion claim, and emphasizing that "[w]hile GMAC may have had the right as plaintiff's servicer to receive [loan] payments from plaintiff, and while Aurora may have had the right as plaintiff's senior servicer or owner of the loan to receive payments from GMAC, neither had the right to allegedly convert

7

plaintiff's funds for their own gain"). Accordingly, Fannie Mae and Ocwen's motion will be denied with respect to this claim.

## II.   Count IV: Breach of Fiduciary Duties

In Count IV, the Redmans claim that Atlantic, the substitute trustee, "breached its fiduciary duty to the Redmans by not having the appointment document identify the party with the power to appoint it." Am. Compl. ¶ 124. The Redmans further allege that Atlantic breached fiduciary duties "when, acting through its agent Glasser & Glasser, it negotiated a reinstatement fee of an improper amount and failed to inform Mr. Redman of the date of the foreclosure sale during the time it was in communication with him about the reinstatement of the loan." Id. ¶ 126.

The Redmans are correct that a deed of trust gives rise to certain fiduciary duties. See Smith v. Credico Indus. Loan Co., 362 S.E.2d 735, 736 (Va. 1987). Under Virginia law, however, such duties are limited to those set forth in the deed of trust itself. See Warner v. Clementson, 492 S.E.2d 655, 657 (Va. 1997) ("The powers and duties of a trustee in a deed of trust, given to secure the payment of a debt, are limited and defined by the instrument under which he acts.") (internal citation and quotation marks omitted); see also Horvath v. Bank of New York, No. 1:09-cv-01129, 2010 U.S. Dist. LEXIS 19965, at *4 (E.D. Va. Jan. 29, 2010) ("Under Virginia law, . . . trustees only owe duties listed in the deed of trust.").

In this case, the amended complaint fails to set forth any fiduciary duties arising pursuant to the deed of trust. The Redmans do not allege that the deed of trust required Atlantic to ensure that it was properly appointed as substitute trustee, to provide an accurate reinstatement fee, or to

8

keep them fully informed as to the status of the foreclosure proceedings.\* "Without the proscribed existence of a fiduciary duty, [the plaintiffs'] claim for the breach of such a duty must fail." Carter v. Countrywide Home Loans, Inc., No. 3:07CV651, 2008 U.S. Dist. LEXIS 67014, at \*30 (E.D. Va. Sept. 3, 2008); see also Sheppard v. BAC Home Loans Servicing, LP, No. 3:11-cv-00062, 2012 U.S. Dist. LEXIS 7654, at \*27 (W.D. Va. Jan. 24, 2012) (holding that the plaintiff could not prevail on his claim for breach of fiduciary duties against the substitute trustee, since the deed of trust contained "no duty . . . requiring the trustee to ensure either that it was properly appointed or that the entity invoking the sale [was] the secured party with authority to foreclose"). Accordingly, Count IV must be dismissed.

### III. Count VI: Quiet Title

In Count VI, the Redmans seek an order to quiet title against Fannie Mae. "A person seeking to quiet title must plead that she has superior title over the adverse claimant." Squire v. Va. Hous. Dev. Auth., 758 S.E.2d 55, 62 (Va. 2014). Thus, in order for a quiet title claim to survive a motion to dismiss in the foreclosure context, "the former homeowner must plead that she has fully satisfied all legal obligations to the real party in interest." Id.; see also Jones v. Fulton Bank, N.A., 565 F. App'x 251, 253 (4th Cir. 2014) ("The Joneses have not alleged that they have satisfied their obligations; thus, their quiet title action must fail."). Because the Redmans do not allege that they have satisfied all of their obligations, their quiet title claim must be dismissed.

---

\* While the deed of trust did require the "Lender or Trustee" to provide notice of the foreclosure sale as required by applicable law, Deed of Trust ¶ 22, it is undisputed that such notice was provided via the September 27, 2013 letter from Glasser & Glasser. See Va. Code § 55-59.1(A) (requiring that written notice of a foreclosure sale be provided no less than 14 days prior to the sale). Although the Redmans allege that they did not receive the letter until after the foreclosure sale occurred, they acknowledge that the letter was sent. See Am. Compl. ¶ 62 ("Defendant Glasser & Glasser sent out a notice of the foreclosure sale on September 27, but the Redmans never received it.").

9

## IV. Count VII: Slander of Title

In Count VII, the Redmans assert a claim for slander of title against the defendants. "An action for slander of title requires '(1) the uttering and publication of the slanderous words by the defendant, (2) the falsity of the words, (3) malice, and (4) special damages.'" Lodal v. Verizon Va., Inc., 74 Va. Cir. 110, 112 (Va. Cir. Ct. 2007) (quoting Bison Bldg. Co., LLC v. Brown, 70 Va. Cir. 348, 355 (Va. Cir. Ct. 2006)). "The action is not for the words spoken, but for the special damages for the loss sustained by reason of the speaking and publication of the slander." Brown, 70 Va. Cir. at 355 (internal citation omitted). Thus, "to succeed on an action for slander of title, the plaintiffs must prove that they suffered special damages in the form of a pecuniary loss resulting from the disparaging words or material." Sparks v. Kendall, 73 Va. Cir. 325, 326 (Va. Cir. Ct. 2007); see also Allison v. Shapiro & Burson, LLP, No. 1:09CV00057, 2009 U.S. Dist. LEXIS 108040, at *21 (W.D. Va. Nov. 19, 2009) ("It is not sufficient to simply allege a cloud on the title of the plaintiffs' property; a plaintiff must plead and prove that he has suffered a monetary loss as a result of the defendant's actions."). Under the Federal Rules of Civil Procedure, special damages must be pled with specificity. See Fed. R. Civ. P. 9(g) ("If an item of special damage is claimed, it must be specifically stated.").

In this case, the Redmans claim that the defendants committed the tort of slander of title by "pursuing an improper foreclosure and filing an improper foreclosure deed," and that they are entitled to recover damages from the defendants. Am. Compl. ¶ 148-49. However, the Redmans do not allege that they suffered any special damages as a result of the publications related to the foreclosure, much less plead such damages with the degree of specificity required by Rule 9(g). Consequently, the court concludes that the slander of title claim must be dismissed.

10

## V. Count VIII: Conspiracy

In Count VIII of the amended complaint, the Redmans assert a claim for conspiracy against the defendants. To support this claim, the Redmans allege that the defendants "worked together to pursue foreclosure and eviction of the Redmans in an unlawful way" and "in an improper manner." Am. Compl. ¶¶ 151-54.

Under Virginia law, the elements of a civil conspiracy claim are (1) "an agreement between two or more persons"; (2) "to accomplish an unlawful purpose or to accomplish a lawful purpose by unlawful means," which (3) "results in damage" to the plaintiffs. Firestone v. Wiley, 485 F. Supp. 2d 694, 703 (E.D. Va. 2007) (citing Glass v. Glass, 321 S.E.2d 69, 74 (Va. 1984)). To withstand a motion to dismiss, a plaintiff must "plead the requisite concert of action and unity of purpose in more than mere conclusory language." Bay Tobacco, LLC v. Bell Quality Tobacco Prods., LLC, 261 F. Supp. 2d 483, 499-500 (E.D. Va. 2003). "Where . . . there are only vague, conclusory allegations of conspiracy the claim fails at the threshold." Firestone, 485 F. Supp. 2d at 704.

Applying these principles, the court concludes that the Redmans' civil conspiracy claim must be dismissed. Even assuming that the foreclosure and eviction proceedings were conducted in an unlawful manner, the amended complaint contains only conclusory allegations as to the defendants' agreement to engage in unlawful conduct. Because such allegations are insufficient to state a plausible claim for relief, the court will grant the defendants' motions with respect to this count.

## Conclusion

For the reasons stated, the motion to dismiss filed by Fannie Mae and Ocwen will be granted in part and denied in part, and the motion to dismiss filed by Atlantic will be granted.

11

The Clerk is directed to send certified copies of this memorandum opinion and the accompanying order to all counsel of record.

ENTER: This 12th day of January, 2015.

*[signature]*
Chief United States District Judge